MULLINS v ST JOSEPH MERCY HOSPITAL

Docket No. 263210. Submitted June 19, 2006, at Lansing. Decided July 11, 2006, at 9:10 a.m.

Clyde Mullins, personal representative of the estate of his deceased wife, Nina F. Mullins, brought a medical malpractice wrongful death action in the Washtenaw Circuit Court against St. Joseph Mercy Hospital and others. While trial was pending, the decedent's daughter, Mary L. Mullins, replaced her father as personal representative, but did not inform the court. The hospital moved for summary disposition, arguing that the two-year period of limitations had run before Clyde Mullins filed the complaint and that the two years allotted by the wrongful death saving statute for him to file the complaint had also run. The court, Donald E. Shelton, J., granted Mary Mullins's motion to substitute as the plaintiff, retroactive to when she received her letters of authority. The court also denied the hospital's summary disposition motion. The hospital and three of the other defendants, who were physicians, sought leave to appeal. In lieu of granting leave to appeal, the Court of Appeals, O'CONNELL, P.J., and METER and SCHUETTE, JJ., in an unpublished order entered January 20, 2005 (Docket No. 258139), remanded the case to the trial court to reconsider the summary disposition motion in light of *Ousley v McLaren*, 264 Mich App 486 (2004). On reconsideration, the trial court concluded that neither *Ousley* nor *Waltz v Wyze*, 469 Mich 642 (2004), applied to this case. The hospital and the three physician defendants appealed by leave granted. The Court of Appeals, FITZGERALD, P.J., and O'CONNELL, J. (KELLY, J. concurring in part and dissenting in part), reversed because it was required to follow the holding in *Ousley* concerning the retroactivity of *Waltz*. Under *Waltz*, the tolling statute, MCL 600.5856, did not toll the operation of MCL 600.5852, the saving statute for actions by personal representatives. The complaint in this case was thus untimely because it was filed more than two years after Clyde Mullins received his letters of authority and Mary Mullins did not file a separate complaint as successor personal representative. Had it not been obligated to follow *Ousley*, however, the panel would have applied *Waltz* prospectively only and would have concluded that the complaint was filed within the time limits set forth in *Omelenchuk v City of*

*Warren*, 461 Mich 567 (2000), that *Waltz* overruled. 269 Mich App 586 (2006). The Court of Appeals convened a special panel to resolve the conflict between this case and *Ousley* and vacated part III of its prior opinion in this case. 269 Mich App 801 (2006).

After consideration by the special panel, the Court of Appeals *held*:

*Ousley* reached the correct conclusion concerning the retroactivity of *Waltz* and is reaffirmed. In summary disposition orders entered in *Wyatt v Oakwood Hosp & Med Ctrs*, 472 Mich 929 (2005), *Evans v Hallal*, 472 Mich 929 (2005), and *Forsyth v Hopper*, 472 Mich 929 (2005), issued one day after its denial of leave to appeal in *Ousley*, the Supreme Court plainly and unambiguously expressed its intent that *Waltz* apply retroactively. These orders are binding precedent and are dispositive of the issue.

Reversed and remanded for entry of summary disposition for the defendants.

MURPHY, J., dissenting, disagreed that *Waltz* should be given retroactive effect. The Supreme Court orders in *Wyatt, Evans*, and *Forsyth* and the denial of leave in *Ousley* do not constitute binding precedent. The orders do not provide reasons for the decisions that are constitutionally sufficient for the orders to be precedential. The Court of Appeals, by determining that a conflict with *Ousley* existed and convening a special panel in this case, already determined that those orders are not precedential. The majority's reliance on them now violates the law of the case doctrine. While the Court of Appeals must follow *Waltz*, it was wrongly decided and clearly contrary to the Legislature's intent. *Waltz* judicially defined MCL 600.5852 as a saving statute, something the Legislature did not do, and the Supreme Court should reconsider its analysis. Nonetheless, *Waltz* should be applied prospectively only. *Waltz* addressed a matter of first impression and overruled *Omelenchuk*, the only case that had provided guidance to the legal community on this case. In light of this and the lack of statutory language indicating that MCL 600.5852 is not subject to tolling, it is not appropriate, fair, or legally sound to apply *Waltz* retroactively.

WHITE, J., dissenting, agreed with Judge MURPHY and Judge COOPER that the Supreme Court orders are not precedential decisions concerning the retroactivity of *Waltz*, and further concluded that *Ousley* was decided incorrectly. Consideration of the balance of justice is a necessary part of the reasoned and responsible application of the law of retroactivity. All the participants in the legal system believed that *Omelenchuk* correctly applied the law, and *Waltz* was the first case in which that understanding was

challenged. The proper application of retroactivity law requires that *Waltz* be applied prospectively only.

COOPER, J., dissenting, agreed with Judge MURPHY's dissent, but wrote separately to address additional issues. The Supreme Court orders cannot be read to apply beyond the cases they specifically address because they lack the statement of reasons and facts constitutionally required for them to be precedential. With regard to the retroactivity of *Waltz*, it is patently unfair to retroactively apply a holding that deprives litigants of a day in court that they clearly had a right to before the holding, and changing the rules in this fashion supports neither certainty nor fairness. Courts that will be bound by the precedent created in this case, however, should consider equitable tolling as it was applied in *Mazumder v Univ of Michigan Bd of Regents*, 270 Mich App 42 (2006).

*Allan Falk, P.C.* (by *Allan Falk*), for Mary L. Mullins.

*Johnson & Wyngaarden, P.C.* (by *David R. Johnson* and *Michael L. Van Erp*), for St. Joseph Mercy Hospital; Kimberly Stewart, M.D.; Jason White, M.D.; and Rafael Grossman, M.D.

Amicus Curiae:

*Mark Granzotto, P.C.* (by *Mark Granzotto*), for the Michigan Trial Lawyers Association.

Before: HOEKSTRA, P.J., and MURPHY, WHITE, TALBOT, METER, COOPER, and DONOFRIO, JJ.

TALBOT, J. This Court convened this special panel pursuant to MCR 7.215(J)(3) to resolve the conflict between vacated part III of the prior opinion in this case, *Mullins v St Joseph Mercy Hosp*, 269 Mich App 586, 591-593; 711 NW2d 448 (2006), and *Ousley v McLaren*, 264 Mich App 486; 691 NW2d 817 (2004). Part III of the prior opinion disagreed with this Court's holding in *Ousley, supra* at 493-495, that the Supreme Court's holding in *Waltz v Wyse*, 469 Mich 642; 677 NW2d 813 (2004), applies with full retroactivity. In light

of the fact that the Michigan Supreme Court has plainly and unambiguously expressed its intent that the decision in *Waltz* applies retroactively, we reject the analysis in part III of the prior opinion in *Mullins*, and reaffirm the retroactivity conclusion reached in *Ousley*.

This conflict presents a narrow question concerning the state of the law governing the retroactivity of *Waltz* at the time this Court issued its prior opinion in *Mullins*. In *Ousley, supra* at 493-495, this Court first addressed the *Waltz* retroactivity question in a binding published opinion, MCR 7.215(J)(1), holding that *Waltz* applied with full retroactivity. The Michigan Supreme Court denied the plaintiff's application for leave to appeal. *Ousley v McLaren*, 472 Mich 927 (2005). The Supreme Court's order denying leave does not constitute binding precedent, MCR 7.321, but the timing of the order is a relevant background fact.[1]

On June 17, 2005, one day after the Michigan Supreme Court denied the plaintiff's application for leave to appeal in *Ousley*, the Supreme Court very clearly expressed its view regarding the extent to which courts should retroactively apply its holding in *Waltz, supra* at 648-655. In three consecutive orders, the Michigan Supreme Court offered the following, specific guidance:

> In lieu of granting leave to appeal, the case is remanded to the Court of Appeals for consideration, as on leave granted, of the question whether the statute of limitations bars an action from proceeding where the complaint was filed more than two years *after* the original letters of authority and *before* the subsequent letters of authority were issued. *That Court is to give the holding of* Waltz v Wyse, *469 Mich 642 (2004), full retroactive application.*

---

[1] In several subsequent published opinions, this Court adhered to the *Ousley* retroactivity analysis. See, e.g., *Farley v Advanced Cardiovascular Health Specialists, PC*, 266 Mich App 566, 574; 703 NW2d 115 (2005); *McMiddleton v Bolling*, 267 Mich App 667, 671; 705 NW2d 720 (2005).

> [*Wyatt v Oakwood Hosp & Med Ctrs,* 472 Mich 929 (2005)
> (citation omitted; third emphasis added).]

> In lieu of granting leave to appeal, the case is remanded
> to the Court of Appeals for consideration, as on leave
> granted, of the question whether the statute of limitations
> bars an action from proceeding where the complaint was
> filed more than two years *after* the original letters of
> authority and *before* the subsequent letters of authority
> were issued. *That Court is to give the holding of* Waltz v
> Wyse, *469 Mich 642 (2004), full retroactive application.*
> [*Evans v Hallal,* 472 Mich 929 (2005) (citation omitted;
> third emphasis added).]

> In lieu of granting leave to appeal, the case is remanded
> to the Court of Appeals for consideration as on leave
> granted. *That Court is to give the holding of* Waltz v Wyse,
> *469 Mich 642 (2004), full retroactive application.* [*Forsyth v
> Hopper,* 472 Mich 929 (2005) (citation omitted; emphasis
> added).]

We find that the repeated and plain expressions of the
Michigan Supreme Court in *Wyatt, Evans,* and *Forsyth,*
which the majority in *Mullins* entirely failed to address,
are dispositive of the *Waltz* retroactivity issue in this
Court. Irrespective of the prior *Mullins* opinion's prof-
fered disagreement with the analysis in *Ousley,* the
panel in *Mullins* erred by disregarding these Supreme
Court directives.

In recent supplemental briefing, plaintiff suggests
that the orders in *Wyatt, Evans,* and *Forsyth* lack any
precedential effect because they do not sufficiently
explicate the Michigan Supreme Court's reasoning be-
hind its directives to apply *Waltz* with full retroactivity.
The requirement that a decision of our Supreme Court
"shall contain a concise statement of the facts and
reasons for each decision" derives from the Michigan
Constitution. Const 1963, art 6, § 6. The Michigan
Supreme Court has recognized that its summary dispo-
sition orders constitute binding precedent when they

"contain[] a concise statement of the applicable facts
and the reason for the decision." *People v Crall*, 444
Mich 463, 464 n 8; 510 NW2d 182 (1993). Similarly, this
Court consistently has adhered to the principle that the
Michigan Supreme Court's summary disposition orders
constitute binding precedent when they finally dispose
of an application and are capable of being understood,
even by reference to other published decisions. *Evans &
Luptak, PLC v Lizza*, 251 Mich App 187, 196; 650 NW2d
364 (2002); *Wechsler v Wayne Co Rd Comm*, 215 Mich
App 579, 591 n 8; 546 NW2d 690 (1996), remanded on
other grounds 455 Mich 863 (1997).

Our treatment of the Supreme Court's orders in
*Wyatt, Evans,* and *Forsyth* as binding precedent does
not undermine Const 1963, art 6, § 6. First, the Su-
preme Court's orders in *Wyatt* and *Evans* each contain
a concise statement of the operative facts where they
state that "the complaint was filed more than two years
after the original letters of authority and before the
subsequent letters of authority were issued." (Empha-
sis omitted.) Second, each of the three orders contains
"reasons for each decision" through explicit reference
to the Supreme Court's published decision in *Waltz*.
Additionally, although the June 17, 2005, orders in
*Wyatt, Evans,* and *Forsyth* do not specifically cite this
Court's decision in *Ousley*, or other cases discussing
principles of retroactivity, our Supreme Court was cer-
tainly cognizant of this Court's retroactivity analysis in
*Ousley, supra* at 493-495, when it similarly concluded in
*Wyatt, Evans,* and *Forsyth* that the decision in *Waltz*
applies retroactively. We cannot forget or ignore that
only the day before entry of the three June 17, 2005,
orders, the Supreme Court had denied the *Ousley*
plaintiff's application for leave to appeal, declining the
opportunity to disturb this Court's conclusion that
*Waltz* must apply with full retroactivity. When the

Supreme Court entered the orders directing full retro-active application of *Waltz*, it essentially sanctioned the retroactivity conclusion reached by this Court in *Ousley*. Thus, considering the Supreme Court orders in *Wyatt, Evans,* and *Forsyth* in the context in which the Supreme Court entered them, the orders easily can be understood to contain "the facts and reasons for each decision" by reference to the full, published decisions in *Waltz* and *Ousley*, in satisfaction of the constitutional mandate. *Wechsler, supra* at 591 n 8, citing *Crall, supra* at 464 n 8.

In summary, the Supreme Court held in *Waltz, supra* at 648-655, that pursuant to then-applicable MCL 600.5856(d), now MCL 600.5856(c), a medical malpractice litigant's filing of a notice of intent does not toll the wrongful death saving period in MCL 600.5852, and this Court in *Ousley, supra* at 493-495, held that *Waltz* applies retroactively. When read together and in reference to *Waltz* and *Ousley*, we view the Supreme Court's orders in *Wyatt, Evans,* and *Forsyth* as complete and understandable. We, therefore, reject plaintiff's contention that the Supreme Court's one-sentence retroactivity statement in a single order, viewed alone and without context, lacks sufficient specificity to control the retroactivity question. We reiterate that the Supreme Court entered three separate orders in three distinct cases involving the issue of *Waltz'*s retroactivity. Each of these cases plainly and unambiguously directed this Court to apply *Waltz* retroactively. We cannot reasonably characterize the Supreme Court's three consecutive June 17, 2005, orders, which identically directed the proper retroactive application of *Waltz,* as limited to the facts of their respective cases. The Supreme Court could not have more clearly expressed its conclusion that *Waltz* applies retroactively in all cases.

To the extent that we ideally might wish to have access to more fully developed guidance from the Supreme Court concerning the retroactivity of *Waltz*, the Supreme Court plainly found that the *Waltz* retroactivity question required no further analysis by it, and we simply cannot disregard the clear import of the guidance that the Supreme Court chose to offer in *Wyatt,* *Evans,* and *Forsyth,* specifically, that *Waltz* applies retroactively in all cases. A review of the Michigan Reports volumes reveals that the Supreme Court occasionally directs the retroactive reach of its prior decisions by orders of summary disposition.[2] In *Wyatt,* *Evans,* and *Forsyth,* the Supreme Court has repeatedly spoken through its orders instructing this Court to apply *Waltz* with full retroactivity, and, as an intermediate court, we are bound by the Supreme Court's clear directives. *Boyd v W G Wade Shows,* 443 Mich 515, 523; 505 NW2d 544 (1993) (noting that this Court and all lower courts must adhere to Supreme Court authority); *People v Kennedy,* 384 Mich 339, 343; 183 NW2d 297 (1971) (observing that "it is axiomatic that a court [including an appellate court] speaks through its orders"). Because part III of the prior opinion in *Mullins* disregarded the binding Supreme Court precedent regarding the retroactive application of *Waltz*, we disavow

---

[2] See *People v O'Donnell,* 474 Mich 867 (2005) (directing that *People v Randolph,* 466 Mich 532; 648 NW2d 164 [2003], and *People v Scruggs,* 256 Mich App 303; 662 NW2d 849 [2002] "are to be given limited retroactive effect"); *Ewing v Detroit,* 468 Mich 886, 887 (2003) (ordering that "[f]or the reasons stated in the dissenting opinion in the Court of Appeals, *Robinson v Detroit,* 462 Mich 439 [613 NW2d 307] (2000), applies retroactively"); *People v Franklin,* 417 Mich 985 (1983) (reversing the defendant's conviction and sentence because his "guilty plea and sentence preceded the Supreme Court's decision in *Briggs* [sub nom *People v Killebrew,* 416 Mich 189; 330 NW2d 834 (1982)] establishing the rule requiring the trial judge to permit a defendant to withdraw his plea in the event the trial judge chooses not to follow a plea-bargain sentence recommendation").

the *Mullins* analysis. We need not consider the merits of *Mullins*'s reliance on *Omelenchuk v City of Warren*, 461 Mich 567; 609 NW2d 177 (2000), rev'd in part in *Waltz*, *supra* at 652-655, or its criticism of the retroactivity analysis in *Ousley*, *supra* at 493-495.

We note that plaintiff and the amicus curiae argue at length that the retroactive application of *Waltz* inequitably deprives some personal representative litigants of otherwise valid medical malpractice claims. To the extent that we may empathize with this contention, we nonetheless may not properly consider the potential application of equitable principles because a separate conflict panel will be convened to consider whether equity may prevent the retroactive application of *Waltz*. *Ward v Siano*, 270 Mich App 801 (2006), vacating in part 270 Mich 584; 718 NW2d 371 (2006).

Lastly, with all due respect, the dissent by Judge MURPHY misinterprets the scope of authority that the Michigan Court Rules plainly vest in a convened conflict panel. Judge MURPHY correctly observes that in voting to convene a special panel to resolve the conflict between *Ousley* and vacated part III of the prior *Mullins* decision, the judges of this Court found that, regarding the retroactivity of *Waltz*, an "outcome-determinative question[]" existed under MCR 7.215(J)(3). But the dissent by Judge MURPHY mistakenly asserts that the order convening a conflict panel in this case restricts the scope of this special panel's resolution of the present conflict.

A review of MCR 7.215(J) reflects that subrules 1 through 4 prescribe the procedure pursuant to which this Court may declare and assemble a special panel to address an outcome-determinative question when a panel of this Court has declared its disagreement with the analysis contained in a prior published opinion of

this Court. No language in subrules 1 through 4 purports to discuss the authority of the convened special panel to consider the substantive merits of the outcome-determinative question. The only subrule of MCR 7.215(J) that refers to the special panel's authority to consider the outcome-determinative question presented is subrule 5, in which the Supreme Court has provided as follows:

> An order directing the convening of a special panel must vacate only that portion of the prior opinion in the case at bar addressing the particular question that would have been decided differently but for the provisions of subrule (1). *The special panel shall limit its review to resolving the conflict that would have been created but for the provisions of subrule (1) and applying its decision to the case at bar.* The parties are permitted to file supplemental briefs, and are entitled to oral argument before the special panel unless the panel unanimously agrees to dispense with oral argument. The special panel shall return to the original panel for further consideration any remaining, unresolved issues, as the case may require. [MCR 7.215(J)(5) (emphasis added).]

The clear and unambiguous language of subrule 5 simply imposes no restriction on the convened special panel's ability to consider and resolve the issue in conflict.[3] See *In re KH*, 469 Mich 621, 628; 677 NW2d 800 (2004) (explaining that unambiguous court rule language must be enforced as plainly expressed, without further judicial construction). Consequently, if the Supreme Court orders in *Forsyth, Wyatt,* and *Evans* bind us and control the outcome of the conflict ques-

---

[3] Subrules 6 and 7 of MCR 7.215(J) likewise pertain to procedure, specifically the publication of the special panel's decision and the time frame for seeking reconsideration or Supreme Court review of the special panel's decision.

tion, as we believe they do, we are both obligated by law to follow them and plainly authorized by MCR 7.215(J)(5) to do so.[4]

Reversed and remanded for entry of summary disposition for defendants.

HOEKSTRA, P.J., and METER and DONOFRIO, JJ., concurred.

---

[4] To the extent that Judge MURPHY's dissent relies on *Health Call of Detroit v Atrium Home & Health Care Services, Inc*, 268 Mich App 83, 98-100; 706 NW2d 843 (2005), in support of the proposition that the order declaring a conflict operates as law of the case restricting the convened special panel's authority to consider the conflict question, the special panel's decision in *Health Call of Detroit* does not consider the unfettered authority to resolve conflict questions that MCR 7.215(J)(5) provides a convened special panel. Furthermore, the panel in *Health Call of Detroit* considered whether the facts in that case generated a conflict that the special panel should address and decide, *id.*, while in this case, we face a pure question of law, specifically whether the Supreme Court's orders in *Forsyth*, *Wyatt*, and *Evans* constitute binding precedent and thus control resolution of the conflict question itself.

The dissent's suggestion that the order declaring a conflict in this case operates as law of the case governing this special panel's consideration of the outcome-determinative question presented not only lacks support in MCR 7.215(J), but constitutes a troubling proposition for a different reason. The dissent notes that at the time the prior *Mullins* decision expressed its disagreement with *Ousley* and the judges of this Court voted to convene this special panel, the Michigan Supreme Court had issued its orders in *Forsyth*, *Wyatt*, and *Evans*; the dissent reasons, therefore, that because "these orders were subject to consideration," this Court's "vote to convene a special panel despite the existence of the Supreme Court orders was essentially a determination that the orders were not binding precedent . . . ." *Post* at 520, 524. Even assuming that we could simply ignore the controlling nature of the Supreme Court orders in this case, the dissent's logic would require us to presume that the judges voting to convene the conflict panel considered the Supreme Court orders, of which the prior *Mullins* decision had made no mention. Given the absence of any mention of the Supreme Court orders in *Mullins,* no facts support the dissent's leap of logic.

MURPHY, J. (*dissenting*). I respectfully disagree with the majority that *Waltz v Wyse*, 469 Mich 642; 677 NW2d 813 (2004), should be given full retroactive effect, as was held in *Ousley v McLaren*, 264 Mich App 486; 691 NW2d 817 (2004). Our Supreme Court's orders in *Wyatt v Oakwood Hosp & Med Ctrs*, 472 Mich 929 (2005), *Evans v Hallal*, 472 Mich 929 (2005), and *Forsyth v Hopper*, 472 Mich 929 (2005), and the Court's denial of the application for leave to appeal in *Ousley*, 472 Mich 927 (2005), do not, in my opinion, constitute binding precedent. And I am firmly of the opinion that *Waltz* was wrongly decided and that a sound analysis of the principles governing the determination of whether a judicial decision should be given retroactive effect, as opposed to prospective effect only, leads to but one reasonable conclusion: *Waltz* should not be applied retroactively. I would settle the conflict in favor of *Mullins v St Joseph Mercy Hosp*, 269 Mich App 586; 711 NW2d 448 (2006), vacated in part 269 Mich App 801 (2006). Accordingly, I dissent.[1]

The Supreme Court orders cited above are clear, concise, and understandable, and they are not con-

---

[1] I recognize that in *McLean v McElhaney*, 269 Mich App 196; 711 NW2d 775 (2005), I concurred in an opinion that declined to call for a conflict panel in light of the orders issued by the Supreme Court, which I believed indicated the Court's stance on whether *Waltz* should be applied retroactively despite a lack of expressed reasoning. Taking into consideration judicial economy and resources, along with the "handwriting on the wall" as reflected in the orders, I thought it more prudent to defer to the Supreme Court with respect to its apparent position on the retroactivity issue and let it make any change in this position if desired, rather than to involve this Court in the laborious conflict process. However, now that a conflict panel has in fact been convened after this Court found that an outcome-determinative issue existed requiring resolution of whether *Ousley* was correctly decided despite the existence of the Supreme Court orders, I find it appropriate to voice my substantive position and address the merits of applying *Waltz* retroactively.

trolled by, nor do they turn on, the particular facts of the case. The legal principle declared, that *Waltz* is to be given full retroactive application, is broad and effectively all-encompassing and not subject to variant interpretations. But the orders do not technically comply with the test set forth in *People v Crall*, 444 Mich 463, 464 n 8; 510 NW2d 182 (1993), in which the Court, addressing an issue regarding the precedential value of its orders, stated:

> In its opinion in this case, the Court of Appeals charac-terized our order in [*People v Bailey*, 439 Mich 897 (1991)] as "not binding precedent." There is no basis for this conclusion. The order in *Bailey* was a final Supreme Court disposition of an application, and the order contains a concise statement of the applicable facts and the reason for the decision. Const 1963, art 6, § 6.[2]

---

[2] A line of cases from this Court has developed that indicates that a final dispositional order issued by the Supreme Court is binding prece-dent simply when it can be understood. *John J Fannon Co v Fannon Products, LLC*, 269 Mich App 162, 165-166; 712 NW2d 731 (2005); *Evans & Luptak, PLC v Lizza*, 251 Mich App 187, 196; 650 NW2d 364 (2002); *Brooks v Engine Power Components, Inc*, 241 Mich App 56, 61-62; 613 NW2d 733 (2000), overruled by *Kurtz v Faygo Beverages, Inc*, 466 Mich 186 (2002); *People v Phillips (After Second Remand)*, 227 Mich App 28, 38 n 11; 575 NW2d 784 (1997); *People v Edgett*, 220 Mich App 686, 693 n 6; 560 NW2d 360 (1996). *Fannon* and *Evans* relied on *Brooks, Phillips*, and *Edgett*, while *Brooks* relied on *Phillips*. In *Phillips* and in *Edgett*, this Court cited *Crall, supra* at 464 n 8, for the proposition that "Supreme Court peremptory orders are binding precedent when they can be understood." *Phillips, supra* at 38 n 11; *Edgett, supra* at 693 n 6. However, a review of *Crall, supra* at 464 n 8, reveals no such ruling. Rather, as quoted above, *Crall* held that an order was binding precedent when the order was a final dispositional order regarding an application and the order contained "a concise statement of the applicable facts and the reason for the decision." *Id.* Other cases from this Court have honored the actual language of *Crall. Dykes v William Beaumont Hosp*, 246 Mich App 471, 483-484; 633 NW2d 440 (2001); *Wechsler v Wayne Co Rd Comm*, 215 Mich App 579, 591 n 8; 546 NW2d 690 (1996), remanded 455 Mich 863 (1997). I note that the *Brooks* panel, although citing the language from *Phillips* regarding orders that can be understood, addi-tionally and correctly cited the language from *Crall. Brooks, supra* at 62.

The need for a concise statement of the facts and a recitation of the reasons for the decision is compelled by, as recognized in *Crall*, the Michigan Constitution.

> Decisions of the supreme court, including all decisions on prerogative writs, shall be in writing and shall contain a concise statement of the facts and reasons for each decision and reasons for each denial of leave to appeal. When a judge dissents in whole or in part he shall give in writing the reasons for his dissent. [Const 1963, art 6, § 6.]

The Legislature similarly mandated the inclusion of language touching on the facts and the reasons for a ruling in Supreme Court decisions, as reflected in MCL 600.229, which provides:

> Decisions of the supreme court, including all cases of mandamus, quo warranto, and certiorari, shall be in writing, with a concise statement of the facts and reasons for the decisions; and shall be signed by the justices concurring in the opinion. Any justice dissenting from a decision shall give the reasons for his dissent in writing under his signature. All opinions and dissents shall be filed in the office of the clerk of the supreme court, and copies of them shall be delivered to the supreme court reporter at the same time.

If the necessity to supply the "reasons" for a decision is satisfied by simply enunciating a legal conclusion, i.e., *Waltz* is to be given full retroactive application, as opposed to providing some legal analysis in support of the conclusion, and if the "decision" in the relevant orders is deemed the directive that the cases be remanded as on leave granted, with the reference to *Waltz* and retroactivity constituting the "reasons" for that decision, then the orders at issue partially satisfy the constitutional and statutory mandates. In my opinion, however, some or all of these assumptions cannot be made. First, the "decision" that is of relevance to us in

these orders is the finding that *Waltz* is fully retroactive, and there are no reasons given for that decision or conclusion in any of the orders.[3] Next, if the "decision" in these orders is indeed the remand directive, the reference to *Waltz* and retroactive application does not appear to be the "reason" for that decision; rather, the language is merely part of the Court's instruction and guidance to this Court with respect to the analysis on remand. Moreover, it is indisputable that the reference to *Waltz* does not constitute the "reason" why *Waltz* applies retroactively, considering that this issue was not broached in *Waltz*. It would certainly be preferable to have the Supreme Court give some minimal explanation or provide even some cursory analysis relative to its legal conclusion that *Waltz* is fully retroactive before these orders are deemed binding precedent, resulting in substantively meritorious cases being sent to the legal graveyard. I think it possible that if the Supreme Court actually prepared a full opinion on the topic, which would force and require consideration and analysis of the principles controlling a retroactivity determination,

---

[3] The pertinent language of *Wyatt* and *Evans, supra* at 929, is identical and states:

> In lieu of granting leave to appeal, the case is remanded to the Court of Appeals for consideration, as on leave granted, of the question whether the statute of limitations bars an action from proceeding where the complaint was filed more than two years *after* the original letters of authority and *before* the subsequent letters of authority were issued. MCR 7.302(G)(1). That Court is to give the holding of *Waltz v Wyse*, 469 Mich 642 (2004), full retroactive application. [Emphasis in original.]

The relevant language of *Forsyth, supra* at 929, simply provides: "In lieu of granting leave to appeal, the case is remanded to the Court of Appeals for consideration as on leave granted. MCR 7.302(G)(1). That Court is to give the holding of *Waltz v Wyse*, 469 Mich 642 (2004), full retroactive application."

a majority of the Court might well conclude that *Waltz* applies prospectively only, or, minimally, resolution of the issue would be difficult.

The majority is forced to speculate that, even though *Ousley* is not mentioned in any of the Supreme Court orders, it is clear that the Supreme Court was cognizant of *Ousley* and its retroactivity analysis, and the Court therefore implicitly sanctioned *Ousley*'s retroactivity analysis in entering the orders. The basis for this reasoning focuses on the fact that the denial of leave in *Ousley* was entered the day before the three orders at issue were entered by the Court. We should not rely on speculation, especially considering the large number of applications presented to the Supreme Court and the involvement of commissioners and staff in preparing the orders, nor should we rely on any implication that the Court sanctioned *Ousley* if this would be inconsistent with the constitutional and statutory provisions cited above, which provide that the reasons for the decision "shall be in writing." Const 1963, art 6, § 6; MCL 600.229. It would have been a simple matter for the Court to have expressly referenced and adopted *Ousley* in the three orders. This is exactly what the Supreme Court did in an order cited favorably by the majority, *Ewing v Detroit*, 468 Mich 886-887 (2003), in which the Court ruled, "For the reasons stated in the dissenting opinion in the Court of Appeals, *Robinson v Detroit*, 462 Mich 439 [613 NW2d 307] (2000), applies retroactively." In another order cited by the majority, *People v O'Donnell*, 474 Mich 867 (2005), the Supreme Court cited two previous opinions in support of its ruling regarding limited retroactivity. I have no qualms with the concept of incorporation by reference, but finding incorporation by speculation and implication is not appropriate.

Even if one determines that the orders include the "reasons" for the decisions in a manner pertinent to the issue before us and consistent with the Constitution and the statute, they do not contain a "concise statement of the facts" as required by Const 1963, art 6, § 6 and MCL 600.229.[4] While the orders are understandable with regard to *Waltz* and its retroactive nature, and can be applied to a broad spectrum of cases outside of *Wyatt, Evans*, and *Forsyth* without the need to know the particular facts involved in other actions, the constitutional and statutory requirements nonetheless remain applicable and must be satisfied. I am not prepared to rule that these orders constitute binding precedent when they do not comply with Const 1963, art 6, § 6, MCL 600.229, and the *Crall* decision.

Viewing the Supreme Court orders at issue as binding precedent that controls the outcome of this conflict dispute is also problematic for the reason that such a conclusion runs contrary to this Court's earlier determination, pursuant to a poll under MCR 7.215(J)(3), that an outcome-determinative issue existed between *Mullins* and *Ousley* and required resolution by a special panel. "Special panels may be convened to consider outcome-determinative questions only." MCR 7.215(J)(3)(a). The decision or outcome in *Mullins* regarding the retroactivity of *Waltz* would not hinge on whether the analysis in *Ousley* was legally correct if indeed the Supreme Court orders are controlling. But this Court has already ruled that an outcome-determinative issue exists, thereby requiring substantive analysis of whether the

---

[4] I disagree with the majority that the orders in *Wyatt* and *Evans* each contain a sufficient statement of the facts, where the language relied on by the majority is simply part of the question framed by the Supreme Court to be addressed on remand. Additionally, the language has nothing to do with retroactivity.

reasoning and holding in *Ousley* was sound and
whether *Waltz* should be applied retroactively, and
any reliance now solely on the Supreme Court orders
would surely run afoul of the law of the case doctrine.
See *Health Call of Detroit v Atrium Home & Health
Care Services, Inc*, 268 Mich App 83, 98-100; 706
NW2d 843 (2005). Importantly, *Mullins* and this
Court's vote to convene a special conflict panel all
occurred after the relevant Supreme Court orders
were issued, and thus these orders were subject to
consideration.

After the *Mullins* panel declared that it was required
to rule that *Waltz* was retroactive because *Ousley*, as
binding precedent, mandated such a ruling, the decision
by this Court, as a whole, to convene a special conflict
panel on the issue reflected an agreement by this Court
that the *Mullins* panel correctly determined that it was
bound by *Ousley*, which controlled the ruling. The
majority's analysis necessarily rejects this conclusion by
determining that *Ousley* does not control and that the
whole matter can be resolved simply by reference to the
Supreme Court orders. There was no conflict that
required resolution if the Supreme Court orders consti-
tuted binding precedent.[5] As such, the majority opinion
is directly contrary to the majority vote of this Court.

---

[5] MCR 7.215(J)(3)(a) provides, in part, that

the chief judge must poll the judges of the Court of Appeals
to determine whether the particular question is both out-
come determinative and warrants convening a special panel
to rehear the case for the purpose of resolving the conflict
that would have been created but for the provisions of
subrule (1).

Again, if the Supreme Court orders are deemed controlling, convening a
special panel could not have been warranted, yet a majority of the full
Court found that the convening of a special panel was indeed warranted.

MCR 7.215(J)(5) does not lend support for the majority's position. The majority relies on the following sentence found in MCR 7.215(J)(5): "The special panel shall limit its review to resolving the conflict that would have been created but for the provisions of subrule (1) and applying its decision to the case at bar." This language merely confines the special panel to analysis of the conflict issue and precludes the special panel from ruling on matters outside the issue for which it was formed; it does not abrogate the law of the case doctrine. Apparently, the majority believes that the language of MCR 7.215(J)(5) gives it, or any other special panel, unfettered and unrestricted discretion in resolving a conflict, without the need to abide by legal principles that govern the manner in which this Court analyzes and decides cases. For example, if a special panel were confronted with a conflict issue regarding a matter of statutory construction, under the majority's reasoning, the panel could ignore and even reject the well-accepted rules of statutory construction in resolving the conflict because, as asserted by the majority, MCR 7.215(J)(5) "simply imposes no restriction on the convened special panel's ability to consider and resolve the issue in conflict." *Ante* at 512. This position is untenable. There are legal rules, principles, and doctrines that we are required to follow in any ruling issued by this Court, and this includes rules of statutory construction as well as the doctrine of law of the case.[6]

The majority finds my position regarding law of the case to be troubling[7] because it requires a presumption

[6] "The law of the case doctrine holds that a ruling by an appellate court on a particular issue binds the appellate court and all lower tribunals with respect to that issue." *Ashker v Ford Motor Co*, 245 Mich App 9, 13; 627 NW2d 1 (2001).

[7] What I find troubling is the majority's refusal to accept that the members of this Court already determined that it was necessary to

that the judges voting to convene the special panel were
aware of the Supreme Court orders when they voted,
yet *Mullins* did not address the orders. I first note that
both the majority and the dissent in *Mullins* cited and
discussed *McLean v McElhaney*, 269 Mich App 196; 711
NW2d 775 (2005), which was decided before the conflict
polling took place. The majority in *Mullins* even di-
rected readers to review *McLean*: "We reject *Ousley* for
the reasons stated in Judge O'CONNELL's dissent in
*McLean* . . . and reiterated in this opinion. For a com-
plete review of the legal development of this issue, we
direct the reader to the *McLean* opinions." *Mullins,
supra* at 587 n 1.

*McLean* extensively addressed the three Supreme
Court orders at issue. *McLean* itself was a published
opinion of this Court and most certainly reviewed by
many members of this Court. Additionally, I am aware
of at least three unpublished opinions of this Court
decided in December 2005, involving nine different
judges of the Court, in which the panels specifically
referred to the three Supreme Court orders relative to
the issue of *Waltz* and retroactivity. See *Amon v Bots-
ford Gen Hosp*, unpublished opinion per curiam of the
Court of Appeals, issued December 27, 2005 (Docket
No. 260252); *Washington v Jackson*, unpublished opin-
ion per curiam of the Court of Appeals, issued Decem-
ber 13, 2005 (Docket No. 263108); *Costa v Gago*, un-
published opinion per curiam of the Court of Appeals,
issued December 6, 2005 (Docket No. 256673). Further,
in *Mazumder v Univ of Michigan Bd of Regents*, 270
Mich App 42; 715 NW2d 96 (2006), a case decided
around the time of the conflict polling and heard in

substantively address the conflict between *Ousley* and *Mullins* on the
issue of retroactivity relative to *Waltz* regardless of the Supreme Court
orders.

December 2005, the Court referred to the three Supreme Court orders. Considering only *McLean, Mullins, Mazumder*, and the three unpublished opinions, I count 17 members of this Court, including myself, who absolutely were aware of the Supreme Court orders at the time of the conflict polling. Furthermore, I am not aware of any authority that suggests that the law of the case doctrine is inapplicable because a judge or a panel in the controlling ruling was unaware of binding precedent. To the contrary, the law of the case applies even if the prior ruling is legally unsound. *Driver v Hanley (After Remand)*, 226 Mich App 558, 565; 575 NW2d 31 (1997) (doctrine applies "without regard to the correctness of the prior determination"). Also, reliance on the argument that the members of this Court might not have been aware of "binding" Supreme Court precedent places all of us in a negative light.

The majority additionally suggests that *Health Call,* which I authored, incorrectly addressed the law of the case doctrine within the context of conflict resolution. For the reasons stated above as part of my analysis here, *Health Call* correctly addressed the issue regarding the law of the case, and, regardless, it represents binding precedent. The majority's attempt to distinguish *Health Call* reveals a fundamental misunderstanding of that decision. The three-member panel that issued the first opinion in *Health Call of Detroit v Atrium Home & Health Care Services, Inc*, 265 Mich App 79; 695 NW2d 337 (2005), vacated in part 265 Mich App 801 (2005) (vacated pursuant to MCR 7.215[J][5] for a special panel to be convened), factually distinguished its case from the earlier opinion in *Environair, Inc v Steelcase, Inc*, 190 Mich App 289; 475 NW2d 366 (1991), yet found that it was nevertheless bound to follow *Environair*. This indicated a position that the legal principle enunciated in *Environair* was a blanket

rule not subject to factual exceptions or distinctions. When this Court voted to convene a special panel in *Health Call*, it necessarily reflected that the Court also found that *Environair* set forth a blanket legal rule not subject to factual exceptions or distinctions, otherwise there would not have existed an outcome-determinative conflict issue to resolve, as *Health Call* could have simply been found factually distinguishable and not controlled by *Environair*. Because a special panel was convened to resolve the conflict, the panel was bound by law of the case, noting, "We must construe *Environair* as standing for the proposition that damages arising out of or related to the termination of an at-will contract are speculative as a matter of law in all cases . . . ." *Health Call, supra,* 268 Mich App at 98. Just as the *Health Call* panel was required to construe *Environair* in a certain way because of the conflict vote to avoid offending the law of the case doctrine, we are likewise compelled to construe the Supreme Court orders as not being binding precedent in order to comply with the doctrine. This is not a matter of ignoring the orders, but merely an acceptance that the issue was necessarily and implicitly dealt with and rejected previously when the polling occurred.

The majority sums up its ruling by stating that if the Supreme Court orders in *Forsyth*, *Wyatt*, and *Evans* bind us and control the outcome of the conflict question, as it believes they do, the Court is obligated by law to follow the orders. This conclusion begs the question: Why, if the orders are binding, did this Court, as a whole, vote to convene a special panel? There can only be one answer: This Court's vote to convene a special panel despite the existence of the Supreme Court orders was essentially a determination that the orders were not binding precedent, yet the majority feels that it can revisit the issue, which I find improper.

If, hypothetically, the Supreme Court, after *Ousley* was decided, had issued a full opinion that analyzed the issue of retroactivity and held that *Waltz* was fully retroactive, and then *Mullins* was decided, in which the Court, as was done here, called for conflict resolution because of a disagreement with *Ousley*, a vote by this Court to nonetheless convene a special panel would necessarily indicate a conclusion that the Supreme Court's decision was not controlling, because otherwise there would be no legal basis or need to convene a panel to resolve a conflict. The actual circumstances here are no different if one concludes that the three orders are binding precedent. Considering the procedural history faced by this conflict panel, I conclude that it is necessary for us to substantively address the issue whether *Waltz* should be applied retroactively.

I now turn to my view of the *Waltz* decision, both the merits of the decision and whether it should be applied retroactively. In this regard, I am reminded of the Michigan Supreme Court's directive in *People v Mitchell*, 428 Mich 364, 369-370; 408 NW2d 798 (1987), in which the Court, while stating that a decision by the Court was binding on the Court of Appeals under the tenet of stare decisis and must be followed, also noted that the Court of Appeals "may properly express its belief that [a Supreme Court decision] was wrongly decided . . . ."

While following *Waltz*, as I must, I respectfully accept the Court's "invitation" to express my belief that *Waltz* was wrongfully decided and that, at a minimum, I am of the opinion that it is unjust for the Michigan Supreme Court to require that *Waltz* be applied retroactively. The holding in *Waltz*, in my estimation, was clearly contrary to the Legislature's intent and represented a strained analysis, purportedly consistent with governing prin-

ciples of statutory construction. In *Waltz*, the Supreme
Court held that the tolling provision found in MCL
600.5856(c),[8] applicable in medical malpractice actions,
does not apply to MCL 600.5852[9] because the tolling
statute only tolls statutes of limitations or repose and
§ 5852 is a wrongful-death saving statute or provision,
not a statute of limitations or repose. The term "saving
statute" is a *judicially created* label, as there is no such
reference in § 5852. The Supreme Court took it upon
itself to define § 5852 as a "saving statute" where the
Legislature itself failed to do so. From an "implied"
perspective, while § 5852 has saving qualities, it can

---

[8] MCL 600.5856 provides, in relevant part:

The statutes of limitations or repose are tolled in any of the
following circumstances:

\* \* \*

(c) At the time notice is given in compliance with the applicable
notice period under [MCL 600.2912b], if during that period a claim
would be barred by the statute of limitations or repose; but in this
case, the statute is tolled not longer than the number of days equal
to the number of days remaining in the applicable notice period
after the date notice is given.

*Waltz* referred to § 5856(d), which, at that time, was the subsection that
contained the tolling provision relative to notice periods in medical
malpractice actions; the provision was moved to § 5856(c) with minor
changes when the statute was amended in 2004. 2004 PA 87.

[9] MCL 600.5852 provides:

If a person dies before the period of limitations has run or
within 30 days after the period of limitations has run, an action
which survives by law may be commenced by the personal repre-
sentative of the deceased person at any time within 2 years after
letters of authority are issued although the period of limitations
has run. But an action shall not be brought under this provision
unless the personal representative commences it within 3 years
after the period of limitations has run.

just as well be viewed as and labeled a statute that provides an alternative limitations period or a limitations period that is applicable under certain circumstances in wrongful-death cases, or simply a statute that has both saving and statute of limitations aspects; it ultimately sets timelines within which actions must be filed or they are lost. MCL 600.5852 is contained in chapter 58 of the Revised Judicature Act (RJA), MCL 600.5801 *et seq.*, and this entire chapter addresses the "LIMITATION OF ACTIONS," according to its title. It defies logic and principles of statutory construction to conclude that, because the Legislature used the words "statutes of limitations or repose" in § 5856, it did not intend to encompass § 5852 for tolling purposes because § 5852 is a "saving statute" and not a statute of limitations, despite the fact that § 5852 is contained in chapter 58 of the RJA, that § 5852 sets forth time periods within which a wrongful-death action must be filed by a personal representative, and that it was *the Court, and not the Legislature,* that labeled § 5852 a "saving statute."

Attributing to the Legislature knowledge and an understanding that § 5852 is a "saving statute" only and using this unexpressed thought, knowledge, or belief in construing other statutes are contrary to a constructionist approach in statutory interpretation. By enacting § 5856(c), the Legislature was plainly and unambiguously providing a tolling period for medical malpractice actions relative to notices of intent, MCL 600.2912b, which tolling comes into play any time a cause of action is susceptible to being lost because the claim would be untimely if there were full compliance with the requirements of § 2912b, and § 5852 indisputably plays a role in determining whether an action is time-barred, which is the essence of limitations periods.

*Waltz* relied in part on *Miller v Mercy Mem Hosp*, 466
Mich 196; 644 NW2d 730 (2002). In *Miller, supra* at
202-203, our Supreme Court stated that § 5852 is a
saving statute and not a statute of limitations, while at
the same time ruling that the six-month discovery
period in MCL 600.5838a(2)[10] is a "distinct period of
limitation." The Court found that the six-month discov-
ery provision in § 5838a(2) is a period of limitations
because "[i]t is a statutory provision that requires a
person who has a cause of action to bring suit within a
specified time." *Miller, supra* at 202. In the context of
defining a statute of limitations, I see no true difference
between a statute that gives a party six months to file
suit after a claim was or should have been discovered
and a statute that gives a party two years to file suit
after letters of authority are issued. Both §§ 5838a(2)
and 5852 are triggered under certain circumstances,
i.e., discovery of a claim or the wrongful death of a
decedent and appointment of a personal representative,
and both require "a person who has a cause of action to
bring suit within a specified time." *Miller, supra* at 202.

Section 5852 allows a personal representative in a
medical malpractice action to file suit within two years
after letters of authority are issued even though the
standard two-year period of limitations on malpractice
actions may have run. Just as § 5852 can "save" an
action when a medical malpractice limitations period
has expired, § 5838a(2) can "save" an action, on the
basis of discovery, when the general limitations period
has run. And both statutes *also* include deadlines
within which to file an action. I also note that

---

[10] MCL 600.5838a(2) provides, in part, that a plaintiff in a medical
malpractice action may commence suit "within 6 months after the
plaintiff discovers or should have discovered the existence of the
claim . . . ."

§ 5838a(2) and (3) provide, in part, that medical mal-practice claims are properly commenced when filed within the "applicable period" prescribed in "sections 5851 to 5856," which encompasses § 5852. This reference to "applicable period[s]" clearly indicates that the Legislature viewed § 5852 as a statute of limitations. Furthermore, *Miller* stated that the purpose of § 5852 was to give personal representatives a reasonable time to pursue actions, *Miller, supra* at 203. Yet how is this purpose served or even recognized in illogically concluding that the Legislature decided to deprive personal representatives in wrongful-death medical malpractice actions from having the benefit of the tolling statute?[11] Again, the Legislature did not call § 5852 a "saving statute." The Legislature directed that a notice be served before the filing of a medical malpractice complaint, § 2912b, and it intended to provide tolling to a plaintiff in such actions, § 5856(c), but that intent is contravened in *Waltz* by a ruling that relies entirely on the judicially created label attached to § 5852.

*Waltz* also relied on *Lindsey v Harper Hosp*, 455 Mich 56; 564 NW2d 861 (1997). In *Lindsey*, the Supreme Court repeatedly referred to § 5852 as the "statute of limitations saving provision." The Court noted that § 5852 has the effect of extending the limitations period set forth in MCL 600.5805 and is "an exception to the statute of limitations . . . ." *Lindsey, supra* at 64-65. The Court's reference to § 5852 being an exception to the statute of limitations was made in the context of its discussion of § 5805, the general statute of limitations,

---

[11] *Miller*'s statement that § 5852 is not a statute of limitations but is rather a saving statute does not appear to be relevant to the holding in the case, in which the Court found that the language of § 5852, limiting claims to those commenced "within 3 years after the period of limitations has run," allowed a claim to be filed within three years of the end of the six-month discovery period in § 5838a(2), which is a period of limitations.

and, in my opinion, was meant to indicate only that § 5852 could be utilized if an action was lost under § 5805, and not that § 5852 lacked its own distinctive features or characteristics common to other limitations statutes. In other words, *Lindsey* merely indicated that § 5852 had a saving feature relative to § 5805, but there was no suggestion whatsoever that other aspects of § 5852 could not be deemed as setting forth limitations periods in their own right that must be satisfied before a suit can be pursued. Indeed, the Court stated that § 5852 extended the limitations period, which language necessarily implies that § 5852 not only can save an action but additionally provides an outer time line within which a suit must be filed. *Lindsey, supra* at 64.

In my opinion, § 5856(c) should apply to § 5852, and I would respectfully encourage the Supreme Court to reconsider its analysis of this issue.

Regarding the issue whether *Waltz*, if it remains unchanged, should be retroactive or prospective only, I conclude that the applicable principles in making this determination favor a finding that it should be applied prospectively only.

The three relevant cases on this issue are *Miller*, *Lindsey*, and *Omelenchuk v City of Warren*, 461 Mich 567; 609 NW2d 177 (2000), overruled in part by *Waltz, supra* at 655. *Lindsey* involved the question whether the plaintiff's wrongful-death action was barred despite § 5852. More specifically, the Court had to decide whether the period provided in § 5852 began to run when the probate court issued the plaintiff letters of authority as temporary personal representative or when the court issued the plaintiff letters of authority as personal representative on a permanent basis. As indicated above, the Court repeatedly referred to § 5852 as the "statute of limitations saving provision." This

language does not clarify whether § 5852 should be considered as solely a saving statute or whether it has additional qualities comparable to statutes of limitations. It cannot be read to have given any meaningful guidance to the bench and bar on the issue whether tolling applied to § 5852. It is beyond any reasonable dispute that *Lindsey* did not address the issue whether tolling under § 5856(c) applies to § 5852.

*Omelenchuk* addressed MCL 600.2912b, the statute governing notices of intent. The Court concluded that a limitations period is tolled for the full 182 days, which is the applicable notice period in § 2912b. *Omelenchuk, supra* at 575. Section 5852 was discussed when the Court was making various calculations under the facts of the case. On February 13, 1994, the decedent died of a heart attack, and on February 14, 1994, two personal corepresentatives were appointed. The personal representatives eventually filed a medical malpractice action. The Court noted that if no tolling provision were applicable, the personal representatives had until February 14, 1996—two years after their appointment—to bring the action. *Omelenchuk, supra* at 569, 577. This determination was made pursuant to, as stated by the Court, the "two-year limitation period" in § 5852. *Id.* at 577. On December 11, 1995, the plaintiffs served the defendants with the notice of intent. *Id.* The Court concluded:

> As a result of the notice, the limitation period was tolled one hundred eighty-two days. Rather than expiring on February 14, 1996, the limitation period thus was tolled from December 11, 1995, until June 10, 1996; it then resumed for another sixty-five days until it expired on August 14, 1996. [*Id.*]

Although not directly addressing the issue whether § 5852 was subject to tolling under § 5856, the *Omelen-*

*chuk* Court's calculations clearly applied the notice of
intent tolling period to § 5852 and the action brought by
the personal representatives. Moreover, the Court re-
ferred to the two-year period set forth in § 5852 as a
"limitation period." The *Waltz* Court pointed out that it
was unnecessary to have even applied § 5852 in *Om-
elenchuk* because the action was timely filed applying
tolling to the standard medical malpractice limitations
period given the date of the death and the act of alleged
malpractice. *Waltz, supra* at 653-655. But the *Waltz*
Court acknowledged that its calculations in *Omelen-
chuk* and the references to § 5852 as providing a limi-
tations period had caused confusion and were errone-
ous. *Id.* at 653-654.

As indicated above, *Miller* addressed the issue
whether the six-month discovery provision in MCL
600.5838a(2), applicable to medical malpractice actions,
is incorporated in § 5852 as a period of limitations. The
Court held that § 5852 does indeed incorporate the
six-month discovery rule. *Miller, supra* at 202. Again,
the issue whether § 5856(c) applies to § 5852 was not
addressed in *Miller.* The *Miller* Court stated, however,
that § 5852 is a saving statute and not a statute of
limitations. *Miller, supra* at 202. While this might
provide some shaky basis for believing that § 5856(c)
would not apply to § 5852, the area of the law was at
best muddled considering *Omelenchuk* and considering
that § 5852 does not contain any express language that
it is a saving statute and not a statute of limitations.
*Omelenchuk* was not cited in *Miller*, and remained good
law at that point in time. Moreover, *Omelenchuk* was
more on point in my opinion. *Waltz* was truly a case of
first impression in a murky area of the law. One could
not have reasonably expected an attorney to read *Miller*
and then, although it had nothing to do with the focus
and holding in *Miller*, pick out the reference to § 5852

as a saving statute and make the leap to analyze this reference in the context of the tolling statute. Even had an insightful attorney made this connection, he or she would most likely have brushed it aside because the Supreme Court itself had applied the tolling statute to § 5852 in *Omelenchuk.*

The general rule is that judicial decisions are given full retroactive effect, but "a more flexible approach is warranted where injustice might result from full retro-activity." *Pohutski v City of Allen Park,* 465 Mich 675, 695-696; 641 NW2d 219 (2002). A holding that over-rules settled precedent may properly be limited to prospective application. *Id.* at 696. This Court should also consider whether a new principle of law was established through a ruling that addressed a matter of first impression that was unforeseeable. *Michigan Ed Employees Mut Ins Co v Morris,* 460 Mich 180, 190-191; 596 NW2d 142 (1999). As stated in *Ousley, supra* at 493, prospective application has been deemed appropriate for decisions that overrule clear and uncontradicted case law or that address issues of first impression whose resolution was not clearly foreshadowed. Before *Waltz,* there did not exist any binding precedent on the par-ticular issue of whether § 5852 was subject to tolling under § 5856(c), but *Omelenchuk* came the closest to dealing with the issue and most certainly gave guidance to those in the legal community, and it would have been entirely reasonable to rely on *Omelenchuk. Waltz* found it necessary to partially overrule *Omelenchuk,* acknowl-edging the confusion, with the Court stating, "To the limited extent that the above-quoted portion of *Omelen-chuk* might be viewed as sanctioning application of the notice tolling provision to the wrongful-death saving provision, it is hereby overruled." *Waltz, supra* at 655. Given that *Waltz* overruled a prior decision, coupled with the fact that a matter of first impression was being

addressed, resulting in a resolution that was not clearly
foreshadowed in light of the language in *Omelenchuk*,
and the strained statutory analysis necessary to reach
that resolution, it would not be appropriate, fair, and
legally sound to apply the decision retroactively. Con-
sidering the purpose of the new rule announced in
*Waltz*, the extent of reliance on *Omelenchuk*, and the
lack of *statutory* language suggesting that § 5852 was
not subject to tolling, and the effect of retroactivity on
the administration of justice, *Pohutski, supra* at 696, I
would conclude, if it were left to me, that *Waltz* should
be applied prospectively only. In *Mazumder, supra* at 55
n 10, this Court noted that at least 17 members of this
Court, as reflected in published and unpublished deci-
sions, presumed that tolling applied to § 5852. Under
such circumstances, how can we now, with any sense of
justice, punish counsel, and thereby punish their cli-
ents, for making that same presumption and pursuing
actions in accordance with this belief.

While I recognize that the "handwriting may be on
the wall" that our Supreme Court will apply *Waltz*
retroactively across the board, on further careful con-
sideration the Court may well take an eraser to the
apparent "writing on the wall" in the interest of fun-
damental fairness and justice. Time will tell.

I respectfully dissent.

WHITE, J. (*dissenting*). For many of the reasons stated
by Judge MURPHY and Judge COOPER, I agree that the
orders in *Evans v Hallal*, 472 Mich 929 (2005), *Forsyth
v Hopper*, 472 Mich 929 (2005), and *Wyatt v Oakwood
Hosp & Med Ctrs*, 472 Mich 929 (2005), are informative
regarding the Supreme Court's thinking at the time
they were entered, but are not precedential decisions on
the question whether *Waltz v Wyse*, 469 Mich 642; 677

NW2d 813 (2004), should be applied retroactively. Because these orders are not precedential decisions, this Court is duty-bound to address the merits of the conflict between *Ousley v McLaren*, 264 Mich App 486; 691 NW2d 817 (2004), and *Mullins v St Joseph Mercy Hosp*, 269 Mich App 586; 711 NW2d 448 (2006). I conclude that *Ousley* was incorrectly decided.

The question whether a decision should be applied retroactively or prospectively only is an inquiry distinct and separate from the underlying decision. The United States Supreme Court rarely, if ever, decides the applicability of a new rule to other cases in the case in which it is announced. The Michigan Supreme Court has yet to decide whether *Waltz* should be applied prospectively only or retroactively. It is settled law that no inference can be drawn from the Supreme Court's denial of leave to appeal in *Ousley*. *Grievance Administrator v Lopatin*, 462 Mich 235, 260; 612 NW2d 120 (2000); *People v Phillips (After Second Remand)*, 227 Mich App 28, 34-35; 575 NW2d 784 (1997). Further, the decision whether to grant leave to appeal and issue a law-making opinion, or to dispose of an individual case by entry of an order directing this Court or a circuit court how to proceed, is one made by the Supreme Court on the basis of a variety of considerations. In *Evans*,[1] *Forsyth*[2], and *Wyatt*,[3] this Court denied the defendants' applications for leave to appeal. The Supreme Court's orders in those cases, which were unanimous, are indicative only of a decision not to grant plenary consideration in those cases, and that rather

---

[1] *Evans v Hallal*, unpublished order of the Court of Appeals, entered February 11, 2005 (Docket No. 259580).

[2] *Forsyth v Hopper*, unpublished order of the Court of Appeals, entered March 9, 2005 (Docket No. 257907).

[3] *Wyatt v Oakwood Hosp*, unpublished order of the Court of Appeals, entered February 11, 2005 (Docket No. 258235).

than require those cases to proceed to final judgment before deciding the *Waltz* issue, this Court should consider those cases as on leave granted, and decide those cases giving full retroactive application to *Waltz*. That unanimous direction cannot properly be viewed as a decision by the Court on the separate question whether henceforth *Waltz*, as a matter of decided law and precedent, should be applied retroactively in all cases.[4] To be sure, the orders may indeed foreshadow the Supreme Court's ultimate decision on the retroactivity issue, but it is a disservice to the Court to assume that the retroactivity decision is a foregone conclusion, or that if the issue reaches the Court for plenary consideration, the justices will not undertake a careful and considered analysis, informed by briefing, argument, and the decisions of the *Ousley* and *Mullins* panels, and of this conflict panel.

From the time the requirement to provide a notice of intent (NOI) was first enacted in 1993, with the concomitant provision that the period of limitations is tolled when the NOI is filed, the provisions were interpreted by the bench and bar as providing for the tolling of the time periods set forth in MCL 600.5852. No case, until *Waltz*, held otherwise. While it is true that the Supreme Court's decision in *Omelenchuk v City of Warren,* 461 Mich 567; 609 NW2d 177 (2000), overruled in part by *Waltz, supra* at 655, did not involve an analysis of the issue presented in *Waltz*, it is equally

---

[4] Respectfully, and without implying that any justice's decision is a foregone conclusion, I observe that given their opinions on the substantive issue in *Waltz, supra* at 655 (dissenting opinion by CAVANAGH, J., concurred in by KELLY, J.), and on the retroactivity issue in *Lindsey v Harper Hosp*, 455 Mich 56, 70; 564 NW2d 861 (1997) (dissenting opinion by KELLY, J., concurred in by CAVANAGH, J.), it is unlikely that Justices CAVANAGH and KELLY, who joined in the *Evans, Forsyth,* and *Wyatt* orders, viewed the orders as precedential decisions on the retroactivity issue.

accurate to observe that the Court included in its
*Omelenchuk* decision an unambiguous application of
MCL 600.5856(d), now 600.5856(c), to § 5852, and, as
observed by Judge MURPHY, clearly referred to the two
years after the letters of authority were issued as "the
two-year limitation period . . . ." *Omelenchuk, supra* at
577. This was not inadvertence or sloppiness; rather, it
was a reflection of the fact that even after *Lindsey v
Harper Hosp*, 455 Mich 56; 564 NW2d 861 (1997),
which itself repeatedly referred to § 5852 as "the stat-
ute of limitations savings provision," the bench and bar
understood the statutes to operate as set forth in
*Omelenchuk*.

Similarly, while *Miller v Mercy Mem Hosp*, 466 Mich
196; 644 NW2d 730 (2002), actually made the distinc-
tion that § 5852 is a saving provision and not a statute
of limitations, the bench and bar did not conclude from
that distinction that the tolling provision of § 5856(d)
did not apply to the periods of § 5852. In *Fournier v
Mercy Community Health Care Sys-Port Huron*, 254
Mich App 461; 657 NW2d 550 (2002), decided six
months after *Miller,* this Court did exactly what the
Supreme Court did in *Omelenchuk* and analyzed the
case by applying § 5856(d) to § 5852. Further, while the
complaint in *Omelenchuk* would have been timely un-
der the *Omelenchuk* Court's decision without regard to
whether § 5856(d) was properly applied to § 5852, this
was not the case in *Fournier*. The *Fournier* Court could
have disposed of the case with dispatch, without decid-
ing whether the personal representative tolled the
period of limitations by complying with the NOI provi-
sion, by observing that the tolling provision does not
apply to § 5852. Instead, the Court discussed the opera-
tion of § 5852 as it relates to medical malpractice
actions, concluded that "the period of limitation expired
July 13, 2000, two years after the letters of authority

were issued," *Fournier, supra* at 466-467, and went on
to determine whether the notice was adequate to toll,
under § 5856(d), the period of limitations resulting
from application of § 5852. The Court concluded that
notice had not been given in compliance with MCL
600.2912b and stated:

> In this case, Fournier died on July 7, 1998. The letters of
> authority were issued on July 13, 1998. Therefore, the
> two-year statutory period of limitation began on July 13,
> 1998, and extended to July 13, 2000. On July 12, 2000,
> plaintiff mailed six notices of intent to Bruer's residential
> address. Because plaintiff did not provide notice "in com-
> pliance with" MCL 600.2912b, the limitation period was
> not tolled by MCL 600.5856(d). Consequently, the limita-
> tion period expired on July 13, 2000. Plaintiff filed the
> complaint on January 10, 2001, well after the limitation
> period expired. [*Fournier, supra* at 468-469.]

Had this Court understood that *Miller* or *Lindsey*
foreshadowed that the consistent and persistent inter-
pretation of the bench and bar, and the consistent
practice of both sides of the bar, during the nine years
since the NOI and tolling provisions were enacted,
including the apparent understanding of the Supreme
Court as applied in *Omelenchuk*, would be rejected as
incorrect by the Supreme Court, it would simply have
stated that Fournier's complaint was filed too late
under any analysis because the NOI was not sent
within the two-year period of limitations, i.e., by July 7,
2000, and the complaint was not filed within two years
after the letters of authority were issued.

At argument before the conflict panel, defense coun-
sel characterized the issue presented here as whether
this panel should follow the law on retroactivity or
reject the correct legal disposition on the basis of vague
and emotional considerations of whether retroactive

application of *Waltz* causes hardship or feels right.[5] This ignores that retroactivity analysis is by its terms concerned with issues of justice. In *Lindsey, supra* at 68, the Supreme Court explained:

> The general rule is that judicial decisions are to be given full retroactive effect. *Hyde v Univ of Michigan Bd of Regents*, 426 Mich 223, 240; 393 NW2d 847 (1986). However, where injustice might result from full retroactivity, this Court has adopted a more flexible approach, giving holdings limited retroactive or prospective effect. This flexibility is intended to accomplish the "maximum of justice" under varied circumstances. *Tebo v Havlik*, 418 Mich 350, 360; 343 NW2d 181 (1984), citing *Williams v Detroit*, 364 Mich 231, 265-266; 111 NW2d 1 (1961).
>
> Prospective application of a holding is appropriate when the holding overrules settled precedent or decides an "issue of first impression whose resolution was not clearly foreshadowed.' " [Citations omitted.]

While the *Lindsey* Court did not "find that the balance of justice demands prospective application in [that] case," *id.* at 69, the Court did so find in *Pohutski v City of Allen Park*, 465 Mich 675; 641 NW2d 219 (2002), in which it applied the same flexible approach approved in *Lindsey* and sought to " 'take into account the total situation confronting it and seek a just and realistic solution of the problems occasioned by the change' " in the law. *Id.* at 695, quoting *Placek v Sterling Hts*, 405

---

[5] Defense counsel argued:

This appears to be a debate between two competing positions, one of which says: read the established rules and principles regarding retroactivity and enforce them in this case, even though some might argue that it causes a hardship; the competing position being: we have a definite and firm conviction that somehow this just doesn't feel right regardless of what the rules might be regarding retroactivity. I admit that that position is appealing and has a certain emotional persuasiveness to it.

Mich 638, 665; 275 NW2d 511 (1979). Notwithstanding defendants' argument, neither this Court nor the Supreme Court should be reluctant to consider the "balance of justice" in determining the retroactivity issue. Such considerations are a necessary part of the reasoned and responsible application of the law of retroactivity.

The experience since the *Waltz* decision has been that defendants who had never thought to seek dismissal on this basis rushed to the courthouse to file their motions for summary disposition. Plaintiffs' lawyers who had carefully and meticulously computed and recorded the limitations periods in their cases, and who had sent NOIs within those limitations periods, and defense lawyers who had carefully and meticulously explored every possible defense on behalf of their clients, and who had failed to identify and pursue the *Waltz* defense, suddenly learned that they, as well as all the judges who understood the statutes to operate as they did, were wrong. It is certainly within the province of the Supreme Court, indeed it is its duty, to correct errors in the interpretation of statutes. However, the experience of the bench and bar before and after *Waltz* makes clear that *Waltz* was a law-changing decision. We should not ignore as judges what is apparent to the entire medical malpractice bar, and to plaintiffs, medical defendants, and insurers alike—that all participants in the legal system believed that *Omelenchuk* correctly applied the law and that *Waltz* was the first time that understanding was challenged. The proper application of retroactivity law requires that *Waltz* be applied prospectively only.

COOPER, J. (*dissenting*). This panel was convened to decide the issue raised in *Mullins v St Joseph Mercy Hosp*, 269 Mich App 586, 592; 711 NW2d 448 (2006),

whether *Ousley v McLaren*, 264 Mich App 486, 494-495; 691 NW2d 817 (2004), was correctly decided or was in error in holding that *Waltz v Wyse*, 469 Mich 642; 677 NW2d 813 (2004), should be applied retroactively. The majority finds, without specifically considering the issues in *Ousley*, that *Waltz* is to be applied retroactively based on the precedential value of three peremptory orders from our Supreme Court directing retroactive application in three cases.[1] I disagree with the majority's analysis of the precedential effect of peremptory orders and would find the three orders at issue do not require this Court to apply *Waltz* retroactively in other cases. Judge MURPHY's dissent considers the issues in *Ousley* and *Waltz* and finds both incorrectly decided. I agree with that dissent, but write separately because I believe there are additional issues to be addressed.

The number and variety of opinions in this case suggest that we are not all really addressing the same question. What seems clear is that the way one frames the question all but dictates the answer. My question is whether retroactive application of *Waltz* supports the ends of fairness or certainty generally, or leads to just results for individual litigants. My answer is that it is patently unfair to retroactively apply a holding that deprives litigants of a day in court that they clearly had a right to before the holding was written, and that changing the rules in this fashion supports neither certainty nor fairness.

The first issue is the precedential effect, if any, of the Supreme Court's orders in *Evans*, *Forsyth*, and *Wyatt*. If, as the majority argues, those orders are binding precedent, then this Court would have no alternative to

---

[1] *Evans v Hallal*, 472 Mich 929 (2005); *Forsyth v Hopper*, 472 Mich 929 (2005); *Wyatt v Oakwood Hosp & Med Ctrs*, 472 Mich 929 (2005).

full retroactive application of *Waltz*. If they are not
binding precedent, however, no matter how instructive
they may be of the direction our Supreme Court would
be likely to take should it agree to decide this issue, we
are duty bound as constitutionally elected judges to
consider the arguments and decide the case as we deem
just and appropriate. We are not bound to follow where
we guess the Court might go, and, indeed, we should
write to urge the Supreme Court to consider the argu-
ments we find relevant.

The Court denied leave to appeal in *Ousley* without
comment. The lower courts may not reasonably read
direction into a denial of leave, because none is given.
Subsequently, the Court on one day issued three peremp-
tory orders. Plainly the three peremptory orders state that
this Court was to apply *Waltz* retroactively in those three
cases, and those orders govern those specific cases. "Al-
though the Supreme Court speaks through an order, its
precedential effect is not clear. . . . Since the order re-
sponds to the particular need created, it may only govern
the case presented." *People v Osteen*, 46 Mich App 409,
417; 208 NW2d 198 (1973).

*Evans* was disposed of in the Court of Appeals by
denial of leave to appeal, and the Supreme Court's order
remanded and directed the Court to consider "the
question whether the statute of limitations bars an
action from proceeding where the complaint was filed
more than two years *after* the original letters of author-
ity and *before* the subsequent letters of authority were
issued," and also to give *Waltz* "full retroactive applica-
tion." *Evans, supra*. The order in *Wyatt* was identical.
The order in *Forsyth* remanded without direction as to
any specific question to be addressed, but did include
direction as to *Waltz* retroactivity. In none of the three
cases is there a published lower court opinion that

recites the facts and circumstances of the case such that the bench, bar, and public could be on notice of what facts and circumstances would give rise to this peremptory treatment by the Supreme Court. Absent such context, the orders cannot be read to have application beyond the cases they specifically address.

The three orders lack the statement of reasons and facts required by the Michigan Constitution: "Decisions of the supreme court . . . shall contain a concise statement of the facts and reasons for each decision." Const 1963, art 6, § 6. Orders that do include such facts and reasoning have been held to be binding precedent. *People v Crall*, 444 Mich 463, 464 n 8; 510 NW2d 182 (1993); *Dykes v William Beaumont Hosp*, 246 Mich App 471, 483; 633 NW2d 440 (2001). The majority argues that the brief orders do contain sufficient facts and reasons for us to decipher what the Supreme Court meant and therefore have precedential value; it further argues that because the Supreme Court had surely read this Court's opinion in *Ousley* and had declined to disturb it, we should assume the retroactivity analysis in *Ousley* was correct. I disagree. The most that may be read into the three peremptory orders is the Supreme Court's disposition of those three specific cases.[2] And the most that can be read into the Supreme Court's denial of leave in *Ousley* is that the Court declined to decide the retroactivity issue at that time.

---

[2] "[T]he precedential effect of a summary affirmance can extend no farther than 'the precise issues presented and necessarily decided by those actions.' A summary disposition affirms only the judgment of the court below, and no more may be read into our action than was essential to sustain that judgment. Questions which 'merely lurk in the record' are not resolved, and no resolution of them may be inferred." *Illinois State Bd of Elections v Socialist Workers Party*, 440 US 173, 182-183; 99 S Ct 983; 59 L Ed 2d 230 (1979) (citations omitted). See also *Anderson v Celebrezze*, 460 US 780, 784; 103 S Ct 1564; 75 L Ed 2d 547 (1983).

As constitutionally elected judges, we are required to follow precedent but not to prognosticate with regard to what the Supreme Court might do. In any case, trying to predict what the Court might do is a risky business. First, our Supreme Court has established that it does not feel particularly bound by the principle of stare decisis: "We must also recognize that stare decisis is a 'principle of policy' rather than 'an inexorable command,' and that the Court is not constrained to follow precedent when governing decisions are unworkable or are badly reasoned." *Robinson v Detroit*, 462 Mich 439, 464; 613 NW2d 307 (2000). On the one hand, this justification for overruling precedent acknowledges that even poorly reasoned prior decisions do indeed "govern," and *Waltz*, overruling *Omelenchuk*, impliedly acknowledges the same—that *Omelenchuk* did indeed govern, confirming that it was settled law and that *Waltz* therefore merits prospective application only. On the other hand, it suggests that if we try to predict what the Court might do with *Mullins*, we might very well be wrong.

Second, in addition to reversing precedent set by prior Courts, the current Court has from time to time qualified or clarified its own recent rulings in subsequent decisions. Relevant to the core issue here, the Court openly acknowledged in *Waltz* that its words in *Omelenchuk* were "imprecise," *Waltz, supra* at 654, but that is not the only example of correction or clarification. For example, in *People v Mendoza*, 468 Mich 527; 664 NW2d 685 (2003), the Court readdressed the meaning of "lesser included offense," which it had spoken to just the year before in *People v Cornell*, 466 Mich 335; 646 NW2d 127 (2002). In that pair of cases, there was sufficient confusion that the *Mendoza* majority expressly disagreed with the concurrence's "mischaracterization" of *Cornell*. *Mendoza, supra* at 533 n 5. With

all due respect, if the justices of the Court cannot agree about what they said and meant, those of us not privy to their discussions ought not read more into their written words than is expressly there.

Finally, attempting to predict what the Court might do is risky because in some areas there have been unpredictable decisions. After all, who would have predicted the anomalous outcome of *Bryant v Oakpointe Villa Nursing Ctr, Inc,* 471 Mich 411, 432; 684 NW2d 864 (2004), finding a claim time-barred, but allowing plaintiff to proceed because "[t]he equities of this case, however, compel a different result"?

Because I do not believe we should decide cases based on what we think the Supreme Court might or even probably would do, I would not give the three peremptory orders binding precedential effect.

The next issue then is whether *Ousley* was correctly decided, because if it was, then we would be bound to follow it. However, I agree with Judge MURPHY's statement and his conclusion that it was incorrectly decided. Because I would find the *Ousley* Court was incorrect in concluding that *Waltz* did not decide an issue of first impression, the resolution of which was not clearly foreshadowed, I would find that *Waltz* should be applied prospectively only.

In Michigan, prospective application of binding decisions "is generally ' "limited to decisions which overrule clear and uncontradicted case law." ' " *Devillers v Auto Club Ins Ass'n,* 473 Mich 562, 587; 702 NW2d 539 (2005) (citation omitted). We also apply prospectively only decisions that address "an issue of first impression whose resolution was not clearly foreshadowed." *Lindsey v Harper Hosp,* 455 Mich 56, 68; 564 NW2d 861 (1997) (citations and punctuation omitted). What these criteria have in common is a deference to twin concerns

that sound in due process: fairness and fair notice. This at first glance appears to lead to a due process argument, but the right plaintiff is here deprived of does not rise to the level of the life, liberty, or property rights protected by the state and federal constitutions. Although not a violation of a constitutionally protected due process right, retroactivity in this case offends general expectations of the legal process:

> [T]he presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic. Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted. For that reason, the "principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal." [*Landgraf v USI Film Products,* 511 US 244, 265; 114 S Ct 1483; 128 L Ed 2d 229 (1994) (citation omitted).]

This Court in *Ousley* failed to consider the import of these due process concerns in determining that the state Supreme Court's decision in *Waltz* should be applied retroactively. The violation of accepted standards of fair notice was articulated by Judge O'CONNELL in his dissent in *McLean v McElhaney,* 269 Mich App 196, 207; 711 NW2d 775 (2005): "The finest legal augur with the keenest sight and all the birds in the autumn sky could not have anticipated *Waltz's* outcome with enough certainty to provide rudimentary counsel to a prospective client."

*Omelenchuk* was applied by courts and relied on by counsel for four years before the Supreme Court overruled it. The number of cases awaiting the outcome of the debate about retroactive application of *Waltz,* or already disposed of under the harsh dictates of *Ousley,*

confirms that the bar indeed did not anticipate *Waltz*'s outcome. To deprive these plaintiffs of their day in court creates the situation warned of in *Pohutski v City of Allen Park*, 465 Mich 675, 699; 641 NW2d 219 (2002), where the Court declined to apply its holding retroactively because if it did thus apply, plaintiffs in pending cases would "become a distinct class of litigants denied relief because of an unfortunate circumstance of timing." Plainly, retroactive application of *Waltz* violates any reasonable sense of fair notice, and it is patently unfair.

Our Supreme Court has listed three factors to be weighed when considering whether a case warrants prospective application: (1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect of retroactive application on the administration of justice. *Pohutski, supra* at 696. All three of these factors speak to fairness and the balancing of interests.

On one side of the balancing equation rests an interest in certainty and predictability in proceedings, and that interest plainly is impeded by allowing stale claims to proceed. See *Garg v Macomb Co Community Mental Health Services*, 472 Mich 263, 285 n 12; 696 NW2d 646 (2005). But the claims at issue here are not stale claims plaintiffs are unfairly trying to revive with procedural trickery; they are claims that were valid when the plaintiffs started down their legal paths, following advice from their attorneys that was then entirely sound, but which now the courts are attempting to foreclose. Certainty and predictability are by no means served by a system that changes the rules in a way that changes the outcome midway through a claim. Retroactively applying a rule that limits a previously accepted filing time does more than create uncertainty:

it affirmatively precludes claimants from timely filing even if their intended timeline comported with the law as it stood when they developed their legal strategies.

The *Waltz* Court reasoned that the clear and plain language of the tolling provision of § 5856 states that it applies only to statutes of limitation, so parties should not now be surprised that it does not apply to § 5852 since § 5852 is a saving statute. However, the *Waltz* majority had one interpretation of the interplay between the statutes, and the dissent had another. Justice CAVANAGH's dissent in *Waltz* begins by asserting that the majority's holding "has the practical effect of shortening the period the Legislature expressly permits for bringing wrongful death actions." *Waltz, supra* at 655-656.

In light of the confusion, while awaiting clarification from the Legislature, the courts are best served by allowing parties to proceed by following the law as it existed when their claims accrued, which means applying *Waltz* prospectively only. To do otherwise would squarely favor the form over the substance of the affected parties' claims; fairness would be sacrificed entirely to certainty, creating an imbalance that would doubtless have effects beyond the interests of the few plaintiffs still eligible to file if *Waltz* is not applied retroactively.[3]

What this case really boils down to is fundamental fairness, and because I find that it would be unfair to apply *Waltz* retroactively, I would resolve this conflict in favor of *Mullins* and against *Ousley*. Because the majority has reached a different conclusion, I add that

---

[3] Prospective application of *Waltz* will affect the time to file for plaintiffs whose claims did not accrue until after that decision, but at least it will not reach back in time and revoke causes of action upon which plaintiffs had every reason to rely.

courts bound by the precedent created by the majority today should consider equitable tolling as it was applied in *Mazumder v University of Michigan Bd of Regents*, 270 Mich App 42; 715 NW2d 96 (2006). The majority declines to reach this issue because the holding of *Mazumder* has been challenged and is being considered by a separate and distinct conflict panel, although the issues before that panel and the issues before this panel are plainly inextricably intertwined. *Ward v Siano*, 270 Mich App 584; 718 NW2d 371 (2006). I believe consideration of the equitable tolling issue is essential to full analysis of the conflict between *Ousley* and *Mullins*.

The role of the judiciary has always been to provide the citizenry with remedies that back up the rights granted them by the other branches of government. Revoking those remedies is antithetical to that purpose. When the law operates to revoke a remedy, as the majority asserts it does here, the courts must rely on other tools to ensure rights are protected. This Court in *Mazumder* did just that, applying equitable tolling to allow plaintiff to proceed with a claim that would otherwise be time barred. The Court explained that "[t]he doctrine of equitable or judicial tolling 'must and should be rarely invoked' only 'to ensure fundamental practicality and fairness and to prevent the unjust technical forfeiture of a cause of action . . . .' " *Mazumder, supra* at 61 (citation omitted). And the Court reasoned that the facts of the case merited this rare exercise of the equitable approach because "[p]laintiff's failure to comply with the statute of limitations was the product of an understandable misinterpretation of the notice tolling provision, resulting from not only the appellate courts' interpretation of the statutes at issue, but also from the presumed legislative intent." *Id.* at 62.

We are presented with a similar situation here, where plaintiff's failure to comply with the applicable limitations period was not only understandable but predictable, given the accepted state of the law when plaintiff's claim accrued. This Court in *Ward, supra* at 601, cited Judge HOEKSTRA's dissent in *Mazumder*, arguing that equitable tolling is inappropriate because " 'it cannot be said that plaintiff exercised reasonable diligence in the timely pursuit of her claim, in choosing to rely on *Omelenchuk* to afford the relevant statutes a broad interpretation not supported by the plain language of the statute . . . .' " But this argument turns on what "reasonable diligence" meant at the time in question, not retrospectively, after *Waltz* and *Ousley* were decided and plaintiffs were stuck with the choices they had made under an earlier state of the law. Plaintiffs who file anywhere inside the limitations period are reasonably diligent, and these plaintiffs were working with a version of the limitations period that was only declared to be shorter after it was too late for them to file within the newly abbreviated period.

The courts retain equitable discretion to engage in a case by case inquiry that balances fairness and certainty for the parties, and such a case by case analysis will lead in some cases, as it should in this case, to equitable tolling as the appropriate remedy. This Court in *Mullins* reasoned that *Waltz* should not apply retroactively to deprive this plaintiff of a cause of action because "[t]he time limits provided in *Omelenchuk* reflected the current state of the law when the original personal representative, plaintiff's father, filed suit." *Mullins, supra* at 591. This plaintiff and others similarly situated should not be denied their day in court on the basis of a procedural rule that empties the substance from substantively sound claims. I would also ask the Legislature to speak more plainly as to its intent

in the morass of statutes that govern plaintiffs' procedures for bringing wrongful death and medical malpractice claims, in order to undo the injustice done by retroactively applying *Waltz*.

I would resolve this conflict in favor of the majority in *Mullins*.